UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT JOHNSON,

             Plaintiff,

       v.                                  Case No.:6:23-cv-06441

TOWN OF GREECE,                            **FIRST AMENDED**
WILLIAM D. REILICH,                     **COMPLAINT**
MICHELLE MARINI,
KIRK MORRIS,                              **JURY TRIAL**
and                                        **DEMANDED**
KEITH SUHR,

             Defendants.

Robert "Bobby" Johnson ("**Bobby Johnson**" or "**Plaintiff**"), by and through his attorneys, Abrams Fensterman, LLP, as and for his First Amended Complaint against the Defendants, Town of Greece ("**Greece**"), Greece Town Supervisor William D. Reilich ("**Bill Reilich**"), Greece Deputy Supervisor Michelle Marini, Greece Commissioner of Public Works Kirk Morris and Greece Director of Personnel Keith Suhr, alleges as follows:

**<u>Nature of the Case</u>**

1.      Bobby Johnson worked for Greece for thirty-six years, climbing the ladder from part-time high school automotive mechanic to the Deputy Commissioner of Public Works ("**Deputy Commissioner**").  When Bill Reilich became Greece's Town Supervisor in 2014, Bobby Johnson's official Greece duties changed to include thousands of unpaid hours of forced labor for Greece, Bill Reilich, Michelle Marini, Bill Reilich's side business and personal business and the Monroe County Republican Committee (the "**Party**").  Bill Reilich and Michelle Marini orchestrated this unprecedented abuse of power from defining the work to devising schemes to

conceal the wrongdoing. When Bobby Johnson complained about the misconduct, Greece, Bill Reilich, Kirk Morris and Michelle Marini retaliated by rescinding a pay raise and eliminating most of Bobby Johnson's supervisory duties.  Shortly after Bill Reilich directed Bobby Johnson to lie to a district attorney investigator, Bobby Johnson felt the only way to protect his freedom and pension was to take an early retirement.   In retirement, Bobby Johnson stopped doing uncompensated work for Bill Reilich, Michelle Marini and Greece. In retaliation, Defendants refused to enroll Bobby Johnson in the retiree health care insurance benefit he earned and was promised after thirty-six years of service to Greece.

2.      This is a civil action for damages and equitable relief based upon violations that one or more of the Defendants committed of Bobby Johnson's rights guaranteed to him by: (i) the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, (ii) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, (iii) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (iv) the overtime provisions of the New York Labor Law ("NYLL"), NYLL  § 160, N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12,  § 142-2.2; (v) the NYLL's requirement that employers make timely payments according to the terms and conditions of employment, § 191(d) and § 198(1-a); (vi) the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a); (vii) the minimum wage provisions of the NYLL, NYLL § 652; (viii) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL  § 195(3); (ix) Greece's Manager's Handbook; and (x) any other claims that can be inferred from the facts set forth herein.

**Jurisdiction and Venue**

3.      The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1331.  The supplemental jurisdiction of the Court is invoked pursuant to 18 U.S.C. § 1367.

4.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

**Parties**

5.      Bobby Johnson is an individual residing at 2997 Sweden Walker Road, Brockport, New York 14420.  He was employed by Greece for 36 years, from May 1986 until May 2022.

6.      Upon information and belief, Greece is a municipal corporation, having its principal office at 1 Vince Tofany Blvd., Greece, New York 14612-5030.  Greece was an employer of Bobby Johnson for 36 years.  At all relevant times herein, Greece oversaw its operations, paid wages to Bobby Johnson and had the power to hire and fire Greece employees and approve personnel decisions.

7.      Upon information and belief, Bill Reilich is an individual residing at 462 Melwood Drive, Rochester, New York 14626, with a business operating out of 299 Swamp Road, Sweden, New York 14420.  Bill Reilich is the Town Supervisor of Greece.  Bill Reilich has a side business that repairs and upgrades used vehicles and sells them for profit.  At relevant times in the First Amended Complaint, Bobby Johnson completed services for Bill Reilich and his side business.  Based upon his communications with members of the Enterprise (as defined below), Bobby Johnson understood and knew that Bill Reilich would cause Greece to fire him from his appointment as Deputy Commissioner if he did not perform all work that Bill Reilich directed him to complete.  Bill Reilich was an employer of Bobby Johnson and exercised authority and control over Bobby Johnson's work for his side business and personal business. At all relevant times

herein, Bill Reilich oversaw Greece's operations, exercised operational control over Greece and had the power to hire and fire and approve personnel decisions including wage and hour policies. In fact, in 2014, Bill Reilich re-appointed Bobby Johnson as the Deputy Commissioner of Public Works.  At all times relevant, Greece, Bill Reilich and Michelle Marini shared authority to hire and fire Greece employees, determine rates and method of employee pay, administer discipline, control work schedules and other terms of employment, maintain employment records, and handle payroll decisions.

8.      Upon information and belief, Michelle Marini is an individual residing at 232 Torrey Pine Drive, Rochester, New York 14612.  Michelle Marini is the Deputy Town Supervisor of Greece.  At relevant times in the First Amended Complaint,  Bobby Johnson completed services for Michelle Marini, which she directed and controlled as an employer. At all times relevant herein, through direct and indirect communications, Bobby Johnson understood that if he did not perform all duties directed by Michelle Marini that she would cause the Town to fire him from his position of Deputy Commissioner.  At all relevant times herein, Michelle Marini oversaw Greece's operations and had the power to hire and fire and approve personnel decisions.  At all times relevant, Greece, Bill Reilich and Michelle Marini shared authority to hire and fire Greece employees, determine rates and method of employee pay, administer discipline, control work schedules and other terms of employment, maintain employment records, and handle payroll decisions.

9.      Upon information and belief, Keith Suhr is an individual employed by Greece with a principal location of business at 1 Vince Tofany Blvd., Greece, New York 14612-5030.  Keith Suhr is the Personnel Director of Greece.

4

10.     Upon information and belief, Kirk Morris is an individual employed by Greece with a principal location of business at 647 Long Pond Road, Rochester, New York 14612-5030.  Kirk Morris is the Commissioner of the Department of Public Works of Greece.

11.     At all times relevant herein, Greece, Bill Reilich, and Michelle Marini were and are "joint employers" of Bobby Johnson within the meaning of the FLSA.

12.     At all times relevant herein, Bill Reilich and Michelle Marini were and are "joint employers" of Bobby Johnson within the meaning of the NYLL.

**The Enterprise and the Conspiracy**

13.     At all times relevant herein, Greece, Bill Reilich, Kirk Morris, Keith Suhr, Michelle Marini, and non-party Karlee Bolaños constituted an association-in-fact enterprise as such term is defined by RICO (the "Enterprise").

14.     Upon information and belief, Bill Reilich, along with his political appointees, subordinates, and co-conspirators Michelle Marini, Kirk Morris, Keith Suhr, and Karlee Bolaños, utilize political power, and in particular Bill Reilich's position as Town Supervisor of Greece and corresponding position in the Party, for personal gain.  This includes, but is not limited to, extracting "gifts", money, services and favors from politicians, Greece vendors, employees and constituents.

15.     Upon information and belief, the Enterprise's purpose extends to maintaining Bill Reilich's political power, his position with Greece, and the Enterprise's ability to profit from his position by committing self-serving acts, covering up wrongdoing, retaliating against whistleblowers and opponents, and using Town resources to service Bill Reilich and his associates' political campaigns.

16.     Upon information and belief, the Enterprise commenced at or around 2014 when Bill Reilich was elected Town Supervisor and Michelle Marini became an employee of the Town. As co-conspirators joined the Enterprise between the years of 2014 and present, each co-conspirator was aware of the Enterprise, participated in the actions of the Enterprise, voluntarily furthered in the goals of the Enterprise and personally benefitted from the Enterprise.

17.      Bill Reilich, Kirk Morris, and Michelle Marini are sophisticated individuals with years of political experience and savvy.  Karlee Bolaños is a sophisticated attorney.  Keith Suhr is a long term employee of Greece who took an "active role in reorganizing and appropriately cataloging all historical documents, and artifacts owned by the Town."

18.     The named members of the Enterprise, as detailed below, knew and agreed to facilitate a pattern of racketeering activity that leveraged co-conspirator Greece and its resources in adoption and execution of the common goal of increasing political power, influence and financial gain of Bill Reilich and his inner circle.

19.     Indeed, upon information and belief, the co-conspirators often referred to themselves as the "team."

**Enterprise's Course of Conduct**

20.     Politicians routinely asked Bill Reilich for his support and the support of the Party (collectively, the "**Support**").

21.     Upon information and belief, Bill Reilich required some of those politicians to directly pay him cash in exchange for Support.

22.     Upon information and belief, Bill Reilich would require other politicians to make improvements to his personal property in exchange for Support, including but not limited to the building of decks and installation of insulation.

23.     Upon information and belief, Bill Reilich required Candidates to pay him cash from the amounts raised at their individual fundraisers.  Upon information and belief, one or more of these payments was made by check.

24.     Upon information and belief, all of the funds collected by Bill Reilich furthered the Enterprise as his personal wealth was increased.

25.     Upon information and belief, the Enterprise also leveraged relationships with companies involved in the construction business for the purposes of the Enterprise.

26.     Upon information and belief, general contractors were not awarded construction bids in Greece unless they arranged for donations to be made to the election campaign of Bill Reilich.

27.     Upon information and belief, general contractors were not awarded construction bids in Greece unless they agreed to deliver envelopes to sub-contractors to be filled with donations to Bill Reilich and/or his campaign.

28.     Upon information and belief, general and/or sub-contractors were not awarded construction bids in Greece unless they agreed to perform services in the personal residences of members of the Enterprise and/or their families.

29.     Upon information and belief, the Enterprise also improperly leveraged Greece employees and appointees to further the interests of the Enterprise.

30.     Members of the Enterprise would require Greece employees and appointees to collect petition signatures for Party politicians.

31.     Members of the Enterprise would require Greece employees and appointees to unload election signs from trucks for Party politicians.

32.     Members of the Enterprise would require Greece employees and appointees to distribute election signs for Party politicians.

33.     Members of the Enterprise would require Greece employees and appointees to stuff envelopes related for Party politicians' campaign mailings.

34.     Upon information and belief, and in furtherance of the Enterprise, Bill Reilich, Michelle Marini, and Greece would funnel contracts to entities owned by Enterprise members including Paragon Compliance LLC.

35.     Upon information and belief, members of the Enterprise would divert Greece resources and property for their personal gain and to further the goals of the Enterprise.

36.     Upon information and belief, Greece buildings were routinely utilized by members of the Enterprise to conduct political activities including, but not limited to, meetings with politicians and preparing envelopes for mass mailings.

37.     Upon information and belief, Greece resources were used by the Enterprise to further the Enterprise's goal of financial enrichment including the repair of Bill Reilich's golf cart.

38.     Upon information and belief, Greece resources were diverted by the Enterprise to further the Enterprise's goals by requiring the repair of designated sidewalks so that Michelle Marini could enjoy walks with her daughter.

39.     Upon information and belief, in furtherance of the Enterprise's goals, a member of the Enterprise demanded that the Greece Police Department charge an individual with a crime because the Enterprise believed that the individual would harm Bill Reilich's campaign to be re-elected.

40.     Upon information and belief, in furtherance of the Enterprise's goals, a member of the Enterprise threated a Greece Police Officer with a criminal charge of election interference in

connection with Bill Reilich's election campaign if he did not voluntarily accept a disciplinary penalty.

41.     Upon information and belief, in furtherance of the Enterprise's goals, members of the Enterprise threatened and intimidated the press and watchdogs by using Greece resources to send cease and desist letters, threaten criminal prosecutions and insert false information into official reports.

42.     Upon information and belief, in furtherance of the Enterprise's goals, members of the Enterprise provided incomplete and inaccurate information to the Monroe County District Attorney's office in connection with the investigation of an accident near the time of an election day.

43.     Upon information and belief, in furtherance of the Enterprise's goals, members of the Enterprise caused Greece's banking relationship to change in exchange for political donations to Bill Reilich.

44.     Upon information and belief, in furtherance of the Enterprise's goals, members of the Enterprise arranged for and/or allowed favorable property assessments to individuals who were members or supporters of the Enterprise.

45.     Upon information and belief, in furtherance of the Enterprise's goals, members exerted improper influence into Greece's approval/denial of work permits, as well as code violation citations.

46.     Upon information and belief, the Enterprise has existed in some form since approximately 2014, during which time Bill Reilich, Michelle Marini, and Kirk Morris were elected, hired or appointed by the Town.

47.     Upon information and belief, Keith Suhr has been associated with the Enterprise and assisted in its goals at least since he became the Greece Personnel Director in 2022.

48.     Upon information and belief, Karlee Bolaños has been associated with the Enterprise and assisted in its goals since approximately 2017.

49.     The Enterprise's activities continue to this day.

**Bobby Johnson's Career**

50.     In April 1986, Bobby Johnson went to work for Greece as a seasonal automotive mechanic through a high school BOCES program.

51.     On July 27, 1987, Greece hired Bobby Johnson as a full-time laborer.

52.     In 1987, Bobby Johnson was promoted to the position of full-time mechanic for Greece. In 2000, Bobby Johnson was promoted to Senior Labor Foreman in charge of vehicle maintenance. In 2003, Greece promoted Bobby Johnson to management.

53.     On January 1, 2006, after twenty years of exceptional service to Greece, Bobby Johnson was appointed the Deputy Commissioner of Public Works.

54.      In this role, Bobby Johnson was responsible for overseeing his department's operations, including balancing the budget, managing subordinates and responding to residents' inquiries.

55.     Bobby Johnson's terms of employment with Greece were governed by Greece's Managers' Handbook.  These terms included a thirty-five-hour work week, with a standard workday of seven hours.

56.     In January 2014, Bill Reilich took office as Greece's Town Supervisor.

57.     In 2014, Bill Reilich reappointed Bobby Johnson as the Deputy Commissioner of Public Works.

**"If they can't do anything for us, we don't need them."**

58.     Unlike Bobby Johnson, Bill Reilich is a sophisticated and skilled politician.

59.     When talking about Greece residents, Greece employees, Greece vendors, or other politicians, Bill Reilich and Michelle Marini would often say "if they can't do anything for us, we don't need them."

60.     Bobby Johnson understood this mantra to mean that in exchange for their goodwill, Bill Reilich and/or Michelle Marini expected to receive donations, support, home improvements, goods, services, private jet rides, and favors.  He further understood this statement to mean that Bill Reilich and Michelle Marini would not do anything for an individual or business who was unwilling or unable to provide them with graft.

61.     Bobby Johnson believed that his Greece employment, pension and ability to make a living were contingent  upon doing what was demanded by Bill Reilich and Michelle Marini.

62.     At all relevant times, Bobby Johnson was aware that Bill Reilich and other members of the Enterprise used their influence with other municipalities to ensure that employees who left Greece would not be employed by those municipalities.  As a result, Bobby Johnson had no choice but to continue to complete the services demanded by Bill Reilich as he would not have been able to secure a similar job in a local municipality.

**The Ranch and the Coverup**

63.     Upon information and belief, Bill Reilich owns a building on Swamp Road in Sweden commonly referred to as "Hot Rod Ranch" or the "Ranch."

64.     At all times relevant herein, Bill Reilich purchased used vehicles including cars, recreational vehicles, motor homes and dirt bikes.  Bill Reilich arranged for those vehicles to be brought to the Ranch, where they were worked on, repaired, refurbished and prepared for resale.

11

Bill Reilich then sold those vehicles at auctions or on platforms like Facebook Marketplace for a significant profit.

65.     As will be detailed below, from 2014 until his forced retirement Bill Reilich required Bobby Johnson to inspect, transport, work on, repair, and refurbish the vehicles he resold in his side business.  Bobby Johnson was also required to directly respond to inquiries and questions from the individuals who purchased vehicles from Bill Reilich.  At all relevant times, Bobby Johnson understood that Bill Reilich would cause Greece to fire Bobby Johnson from his position as Deputy Commissioner if he failed to perform these duties.  At all relevant times, Bobby Johnson understood that Bill Reilich would foreclose any ability of Bobby Johnson to be hired at a comparable job at any other municipality.

66.     A small sample of the services that Bobby Johnson performed on those vehicles included working on headliners, grills, pressing bearings, repairing CV shafts, replacing brakes, replacing clutches, replacing fuel and brake lines, replacing water pumps, replacing radios, replacing broken tail and head lights, replacing window and wiper switches, repairing and replacing electrical systems, installing wiring, removing plow frames, suspension and driveline work, radiator repair, body work, welding and repairing motors.

67.     Examples of these vehicles include, but are not limited to, a 1980 Shay Model A replica, a 1991 Crown Victoria Station Wagon, a 1998 Lincoln, a 1971 Corvette, a Bentley, a 1955 Chevy, a 1968 Mustang, a 2005 green Thunderbird, a Volkswagen Bug, a 2005 Corvette, a 1950's Truck, a 1947 Ford and a Batmobile.

**2014**

68.     In 2014, Bill Reilich asked Bobby Johnson to perform services at the Ranch including repairing vehicles he resold and servicing Bill Reilich's family vehicles.  Bobby Johnson

agreed to this inappropriate request because he believed it was the only way to keep his job, benefits and pension.

69.     During 2014, Bobby Johnson would report to work at the Ranch on Saturdays and work from 8:30 a.m. to 4:30 p.m., with a one-hour lunch break.

70.     Bill Reilich defined the work that Bobby Johnson would do, including identifying the vehicles that needed transport, inspection, repair, refurbishing and servicing.  At Bill Reilich's direction, Bobby Johnson also repaired Bill Reilich's family vehicles.

71.     During 2014, Bill Reilich would give Bobby Johnson personal checks in nominal amounts purportedly representing payments for his efforts.

72.     In 2014, Bill Reilich failed to provide Bobby Johnson with a wage statement that accurately listed Bobby Johnson's actual hours.  During that time, Bill Reilich and Greece failed to pay Bobby Johnson the statutory amount of the required minimum wage.  During that time, neither Greece nor Bill Reilich paid Bobby Johnson an overtime wage for the hours he was required to work at the Ranch in addition to the hours prescribed by Greece.  During that time, Bobby Johnson did not accrue the benefits to which he was entitled at Greece while he worked at the Ranch, including PTO time.

**2015**

73.     In 2015, Bobby Johnson worked seven hours a day at Greece Monday thru Friday. On Saturday and at Bill Reilich's direction, Bobby Johnson worked seven hours a day at the Ranch between the hours of 8:30 a.m. and 5:30 p.m. Bobby Johnson believed that he would lose his employment with Greece if he failed to work at the Ranch as directed and dictated by Bill Reilich.

74.     If Bobby Johnson was unable to work on a Saturday at the Ranch, Bill Reilich would require Bobby Johnson to "make up that time" on a Sunday.

75. During 2015, Bill Reilich also required Bobby Johnson to perform services on weekday evenings, including, but not limited to, picking up and delivering items to Bill Reilich or the Ranch.

76. As a result of this schedule, Bobby Johnson worked in excess of forty hours a week.

77. During 2015, Bill Reilich failed to provide Bobby Johnson with a wage statement that accurately listed Bobby Johnson's actual hours. During that time, Bill Reilich and Greece failed to pay Bobby Johnson the statutory amount of the required minimum wage. During that time, neither Greece nor Bill Reilich paid Bobby Johnson an overtime wage for the hours he was required to work at the Ranch in addition to the hours prescribed by Greece. During that time, Bobby Johnson did not accrue the benefits to which he was entitled at Greece while he worked at the Ranch, including PTO time.

**2016-2019**

78. In 2016, Bobby Johnson told Bill Reilich he could not work at the Ranch on Saturdays because of his family obligations. In response, Bill Reilich told Bobby Johnson that in place of Saturdays, Bobby Johnson would need to work on Fridays at the Ranch. Fridays were convenient for Bill Reilich because he was at the Ranch instead of his office in Greece. This, however, conflicted with Bobby Johnson's obligation to work on business for the Greece Department of Public Works on Fridays.

79. To conceal his misconduct, Bill Reilich devised a scheme that required Bobby Johnson to forfeit seven hours of his Greece PTO time on Fridays. Bobby Johnson's Greece PTO time included sick, vacation, and comp hours that had been earned, but not used and were carried over from year to year for the thirty-six years he worked at Greece.

14

80.     During most of 2016 through 2019, Bobby Johnson would work seven hours at the Ranch on Fridays at Bill Reilich's direction and with his approval, seven hours would be deducted from Bobby Johnson's PTO bank.  For those who were not aware of the situation, it appeared that Bobby Johnson regularly took vacation days on Friday.

81.     From 2016 through 2019, Bobby Johnson routinely worked at the Ranch at Bill Reilich's demand including weekdays, weekends and all nights of the week. For example, Bobby Johnson was required to go with Bill Reilich to inspect a Corvette on Thursday, March 7, 2019. Bill Reilich then required Bobby Johnson to work on the Corvette in the evening hours of Thursday, March 14, 2019.  Bill Reilich also required Bobby Johnson to work on that Corvette on March 16, May 7, May 20, and September 25, 2019.  On Saturday, February 2, 2019, Bill Reilich required Bobby Johnson to be at the Ranch in the morning to work on a ceiling.  On Wednesday, September 25, 2019, Bill Reilich required Bobby Johnson to take delivery of and inspect a green Thunderbird that was being delivered to the Ranch.

82.     From 2016 through 2019, Bobby Johnson was required to travel on account of Bill Reilich's side business of selling used vehicles.  Bill Reilich needed Bobby Johnson to travel with him so that he could repair vehicles if they "broke down" on their way to the Ranch.  Examples of this required travel included, but were not limited to, trips to Nevada on November 7, 2019; Lamar, PA on July 19, 2019; Carlisle, PA from May 30 to June 1, 2019; and Carlisle, PA on June 2, 2018.

83.     During these years, Bobby Johnson routinely worked in excess of forty hours a week.  For example, during the week of November 7, 2019, Bobby Johnson worked in excess of seventy hours.  During the week of March 14, 2019, Bobby Johnson worked in excess of seventy hours working on a Corvette.

84.     From 2016 through 2019, Bobby Johnson worked over 350 hours a year at the Ranch or on Ranch business.

85.     From 2016 through 2019, Bill Reilich  failed to provide Bobby Johnson with a wage statement that accurately listed Bobby Johnson's actual hours.  During that time, Bill Reilich and Greece failed to pay Bobby Johnson the statutory amount of the required minimum wage.  During that time, neither Greece nor Bill Reilich paid Bobby Johnson an overtime wage for the hours he was required to work at the Ranch in addition to the hours prescribed by Greece.  During that time, Bobby Johnson did not accrue the benefits to which he was entitled at Greece while he worked at the Ranch, including PTO time.

**2020-2021**

86.     During 2020, Greece instituted modified work schedules in response to the COVID-19 crisis.  As a result of the modified schedules, Bill Reilich required Bobby Johnson to work additional hours at the Ranch.

87.     Examples of days that Bill Reilich required Bobby Johnson to work at the Ranch include, but are not limited to repairing a Mark II at the Ranch on February 14, 2020, attending to the sale of a 1971 Corvette at the Ranch on September 29, 2020, working on a Ford on July 17, 2020, transporting a Bentley from the Ranch to Buffalo for a trade-in on a Lincoln, repairing a Ford at the Ranch on June 25, 2020, working on a '55 Chevy on April 13, 2020, and receiving delivery of a 1988 Lincoln at the Ranch on April 4, 2021.

88.     During 2020 and 2021, Bill Reilich also continued to require Bobby Johnson to travel for his used vehicle side business.  These trips included, but were not limited to, a trip to Illinois to pick up a motor home, a trip to Ohio to pick up 1980 Shay Model A Replica, and a trip to Indiana to pick up a 1991 Crown Victoria Station Wagon.

16

89.     Bill Reilich's demand of forced labor was regularly communicated by text message. For example, on February 24, 2021 Bobby Johnson told Bill Reilich that he could not work at the Ranch on Friday, to which Bill Reilich responded, "see you Saturday 8:30."

90.     During 2020 and 2021, Bill Reilich failed to provide Bobby Johnson with a wage statement that accurately listed Bobby Johnson's actual hours. During that time, Bill Reilich  and Greece failed to pay Bobby Johnson the statutory amount of the required minimum wage.  During that time, neither Greece nor Bill Reilich paid Bobby Johnson an overtime wage for the hours he was required to work at the Ranch in addition to the hours prescribed by Greece.  During that time, Bobby Johnson did not accrue the benefits he was entitled at Greece while he worked at the Ranch, including PTO time.

91.     At all relevant times, Bobby Johnson understood that if he did not perform uncompensated services for Bill Reilich at the Ranch, Bill Reilich would cause Greece to terminate his position as Deputy Commission at Greece.

**Other Services that Bobby Johnson Was Required to Complete to Keep his Greece Job**

92.     From 2015 through 2021, Bill Reilich and Michelle Marini also required Bobby Johnson to perform countless other services for no compensation, including but not limited to: (1) maintenance and improvements for the personal residences of Bill Reilich and Michelle Marini, (2) services for Bill Reilich's election campaign, including inducing his department's employees to distribute election signs, (3) tasks for the Monroe County Republican party and the candidates it supported, including stuffing envelopes, constructing signs and collecting petition signatures, (5) maintaining the personal driveway of Bill Reilich, (6) "confidentially" removing Greece property to Michelle Marini's garage, (7) making wood centerpieces for a wedding that Michelle Marini was involved in, and (8) installing "ring" camera equipment in Michelle Marini's home.

93.     Bill Reilich also required Bobby Johnson to work on the physical structure of the Ranch, including but not limited to, repairing lights and gutters, mowing the lawn, cutting trees and snow removal.

94.     Like his work at the Ranch, many of the details of these jobs were communicated by text messages from Bill Reilich or Michelle Marini.

95.     Specific examples of these "other obligations" include, but are not limited to delivering a table set for Bill Reilich's motor home on December 3, 2020, working on the Ranch's electrical systems on September 25 and 28, 2020, making and delivering wood centerpieces to Michelle Marini's home on December 14, 2019, working on Bill Reilich's wife's Ford Escape's CV shaft on July 25, 2019, and working on the ceiling of the Ranch on February 2, 2019.

96.     At all times relevant, Bobby Johnson understood that the performance of these services was required and that if he failed to perform them, Bill Reilich and Michelle Marini would cause Greece to terminate Bobby Johnson's position of Deputy Commissioner for the Town.

97.     At all times relevant, Bill Reilich and Michelle Marini failed to provide Bobby Johnson with a wage statement that accurately listed Bobby Johnson's actual hours.  During that time, Bill Reilich, Michelle Marini and Greece failed to pay Bobby Johnson the statutory amount of the required minimum wage.  During that time, Greece, Bill Reilich and Michelle Marini failed to pay Bobby Johnson an overtime wage for the hours he was required to work.  During that time, Bobby Johnson did not accrue the benefits to which he was entitled at Greece, including PTO time.

**Bobby Johnson's Work Performance and Promised Raise**

98.     Bill Reilich and Michelle Marini routinely bestowed the highest praise for Bobby Johnson's work at Greece. In fact, Bill Reilich often told Bobby Johnson that Kirk Morris would not have a job if Bobby Johnson did not do his job so well.

18

99.    At or around the time that Bill Reilich sold a Batmobile vehicle that Bobby Johnson worked on, Bill Reilich told Bobby Johnson that Greece was giving him a raise.

100.    Bill Reilich told Bobby Johnson that because he was completing Kirk Morris' job, his raise would put his salary just below Kirk Morris' salary.

**Reporting Abuse of Power and Retaliation**

101.    Eventually, Bobby Johnson's mental and physical health deteriorated as a result of these unconscionable work conditions and demands.

102.    In the summer of 2020, Keith Suhr, who at the time was an Assistant Director/Librarian III at the Greece Public Library, asked Bobby Johnson why he was never at his Greece office on Fridays.

103.    Bobby Johnson responded that he was required to work for Bill Reilich at the Ranch on Fridays.

104.    In late 2020, Bobby Johnson asked his direct supervisor Kirk Morris to intervene with Bill Reilich and Michelle Marini, stop the unlawful labor practices and protect his job.

105.    Kirk Morris replied that Bobby Johnson should "consider himself lucky" for being in Bill Reilich's inner circle and spending time with him.

106.    Upon information and belief, Michelle Marini and/or Bill Reilich learned about Bobby Johnson's report and complaints.

107.    On Friday December 4, 2020, Bill Reilich was home after surgery and Bobby Johnson was required to help Bill Reilich with his recovery and the work that needed to be done around the home.  On that day, Bobby Johnson had been the Deputy Commissioner for fourteen years without so much as a single write-up, counseling memo, or suspension. Notwithstanding this

record, Bill Reilich told Bobby Johnson that Kirk Morris and Michelle Marini wanted to "get rid of" him.

108.    Upon information and belief, Kirk Morris and Michelle Marini wanted Bobby Johnson fired because he officially reported the misconduct and asked Kirk Morris for help.

109.    Bill Reilich told Bobby Johnson that he "wasn't going anywhere" because he wanted him to stay.

110.    Upon information and belief, this statement was intended to convey to Bobby Johnson that his continued employment at Greece was conditioned upon completing services for free for Bill Reilich, Michele Marini and the Enterprise.

111.    On Monday, December 7, 2020, apparently instead of firing Bobby Johnson, Kirk Morris called a meeting of approximately fifteen Greece employees and advised them that Bobby Johnson had been "reassigned" and stripped of many of his supervisory duties.  This was an adverse employment action.

112.    When Bobby Johnson asked Kirk Morris why he was being punished, Kirk Morris responded that "Michelle wanted you to feel the pinch."

113.    Bobby Johnson understood this explanation to mean that Michelle Marini and Greece were retaliating against him for asking Kirk Morris to intervene and help him with the unlawful labor practices he was experiencing.

114.    Bobby Johnson also understood these events to be a direct communication from Greece, Kirk Morris, Michelle Marini and Bill Reilich that his Greece employment was conditioned upon doing everything Bill Reilich and Michelle Marini told him to do without complaint.

115.     In further retaliation, Greece, Bill Reilich and Michelle Marini refused to give Bobby Johnson the pay raise that Bill Reilich told him he was receiving for "doing" Kirk Morris' job, which was another adverse employment action.

116.     Upon information and belief, this action was intended to convey to Bobby Johnson that his continued employment at Greece was conditioned upon completing services for free for Bill Reilich, Michele Marini and the Enterprise.

117.     Shortly after these events, Bobby Johnson sought out Greece's labor attorney Karlee Bolaños to discuss the situation.  She told him "you look terrible."  He reported the adverse employment actions and how it was impacting his physical and mental health.  Ms. Bolaños, in turn, responded "aren't you still working on Bill's cars at the Ranch?"

118.     Upon information and belief, Greece's labor attorney Ms. Bolaños was conveying to Bobby Johnson that notwithstanding three decades of unblemished service to Greece, Bobby Johnson's continued employment and employment conditions were only protected if he performed uncompensated forced services for Bill Reilich.

119.     Kirk Morris knew what was happening and did nothing to stop the exploitation of Bobby Johnson.  Greece's "employment counsel" Ms. Bolaños knew what was happening and did nothing to stop the exploitation of Bobby Johnson.  Upon information and belief, Keith Suhr knew what was happening and did nothing to stop the exploitation of Bobby Johnson.

120.     Upon information and belief, not only did this cabal of culpable individuals fail and refuse to take action to protect this career civil servant from being grossly exploited, but they aided and abetted the continuation and concealment of this unconscionable abuse of power.

**Time Sheets - "If you are working for Bill, then you are working for the town."**

21

121.     In 2021, the scheme of concealing Bobby Johnson's forced labor at the Ranch was in jeopardy because Bobby Johnson's vacation/PTO bank was low.

122.     In February 2021, Bobby Johnson told Bill Reilich that he was running out of PTO time.  Bill Reilich responded, "you know, Michelle (Marini) doesn't care if you put your time here (at the Ranch) in at Greece."  Bobby Johnson understood that to mean that Bill Reilich and Michelle Marini would make Greece pay for some of the time that Bobby Johnson was working for Bill Reilich.

123.     Alternatively, Bill Reilich offered to create opportunities for Bobby Johnson to bank additional vacation/PTO time.  Examples included Bobby Johnson working on the July 4th holiday, Bobby Johnson traveling to Ohio to pick up a Zamboni, and monitoring the new community center in the early morning hours.

124.     In a meeting in Michelle Marini's office in February 2022, the issue of Bobby Johnson's vacation/PTO time was discussed again.  Michelle Marini told Bobby Johnson, "if you are working for Bill (Reilich), then you are working for the town (Greece)."  It was her direction that Greece would pay Bobby Johnson for the hours he worked on Bill Reilich's personal and side business.  She specifically directed Bobby Johnson to submit the hours that Bobby Johnson spent at the Ranch and on Bill Reilich's other personal matters as time he was working for Greece.

125.     After his meeting with Michelle Marini, Bill Reilich asked Bobby Johnson to come to his office and tell him about the conversation. Bobby Johnson relayed the conversation and Bill Reilich responded, "if Michelle says that's what you should do, then you should do that."

**District Attorney Investigation**

126.     On April 13, 2022, at Bill Reilich's request, Bobby Johnson met him at the Eagle restaurant.

22

127.   Six months earlier, the Greece Police Chief was involved in a serious motor vehicle crash and shortly after that incident, Bobby Johnson was with Bill Reilich at the Ranch while he, Michelle Marini and others participated in numerous phone calls about the crash, the fallout from the crash and other related matters. At lunch on April 13, 2022, Bill Reilich told Bobby Johnson that the District Attorney's office was going to be conducting an investigation into those events and an investigator would be interviewing Bobby Johnson.

128.   Bill Reilich told Bobby Johnson that he had a "bad dream" that during Bobby Johnson's interview, the District Attorney's Office would discover Bobby Johnson's forced labor and the schemes devised by Bill Reilich and Michelle Marini to conceal it.

129.   Bill Reilich told Bobby Johnson that if the investigator asked about his work at the Ranch, Bobby Johnson should tell the investigator that he was not at the Ranch, but was working for Greece from home.

130.   Upon information and belief, this direction was provided to conceal crime(s), conceal violations of law, and obstruct an investigation.

131.   Bill Reilich told Bobby Johnson that he needed to protect his and Michelle Marini's "integrity."

132.   This meeting caused Bobby Johnson considerable mental and physical stress as he now understood that to keep his job at Greece, he would be required to lie to a District Attorney investigator and obstruct an investigation.

133.   Bobby Johnson feared for his job, health, pension benefits and his freedom.  As a result, on May 28, 2022, within weeks of his meeting with Bill Reilich at the Eagle, Bobby Johnson retired.  Bobby Johnson's retirement was forced as he would have continued to serve Greece residents for several more years but for the severe mental anguish these events caused him.

23

**Health Insurance**

134.    Greece's policies provided that because of his title and length of service, Bobby Johnson was entitled to the benefit of retiree lifetime health insurance.

135.    Before he retired, he attempted to enroll in the insurance.

136.    At the time, the Greece Personnel Director told him that he had met all of the eligibility requirements and that he would be enrolled during the next open enrollment period.  The director told him that she would be sending him enrollment documents. Bobby Johnson relied on this representation.

137.    After he retired, Bobby Johnson stopped completing forced and unpaid labor for Bill Reilich at the Ranch.

138.    After he retired, Bobby Johnson stopped maintaining the homes and driveways of Bill Reilich; stopped delivering things like shelving from the Greece library to the homes of Bill Reilich and Michelle Marini; and stopped working on Monroe Republican candidate party members' campaigns.

139.    When it came time to enroll, Bobby Johnson contacted Keith Suhr, the new Personnel Director, and asked him for his enrollment package.  Keith Suhr responded by saying that circumstances had "changed" and that Bobby Johnson was no longer eligible for this benefit.

140.    Bobby Johnson knew that Keith Suhr worked in the library before his recent promotion to Greece's Personnel Director.  As such, Bobby Johnson assumed that Keith Suhr was an unqualified human resource expert and was mistaken.

141.    Bobby Johnson went to Bill Reilich's office and told him that Keith Suhr would not let him enroll.  Bill Reilich responded, "well Bobby, I haven't seen you at the Ranch since you retired."

142.    Upon information and belief, Bill Reilich had directed Keith Suhr to deny Bobby Johnson his lifetime retiree healthcare insurance benefit that he had earned after thirty-six years of service to Greece because Bobby Johnson no longer worked on Bill Reilich's private property and side business for free.

143.    This fact was further confirmed by Keith Suhr's taunting Bobby Johnson that he "would never see that (his denial) in writing."

144.    Bill Reilich, Keith Suhr and Greece deprived him of his right to health insurance because of his refusal to continue to advance the Enterprise's goals.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF 18 U.S.C. § 1962(c) (RICO)**
**(Against Bill Reilich, Michelle Marini, Kirk Morris and Keith Suhr)**

145.    Plaintiff repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

146.    Bobby Johnson's claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-68 is brought against Bill Reilich, Michelle Marini, Kirk Morris and Keith Suhr.

147.    Bobby Johnson is a "person" with standing to sue within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

148.    Bill Reilich, Michelle Marini, Kirk Morris and Keith Suhr are individually a "RICO person" withing the meaning of 18 U.S.C. § 1963(1) because such defendant is an individual or entity capable of holding a legal or beneficial interest in property.

**The RICO Enterprise**

25

149.    Greece, Bill Reilich, Michelle Marini, Kirk Morris, Keith Suhr, and Karlee Bolaños constitute an association-in-fact, and therefore an enterprise within the meaning of  18 U.S.C. § 1961(4). Such RICO enterprise is an ongoing business relationship with the common purposes of:

a.  using Bill Reilich's political power and influence, and in particular Bill Reilich's position as Town Supervisor of Greece, to misappropriate resources from the Town of Greece for their own personal benefit, extract gifts and favors from politicians, constituents, and Greece vendors and employment and otherwise abuse their authority for personal gain; and

b.  maintaining Bill Reilich's political power, his hold on the Town of Greece, and the Enterprise's ability to profit from his position by covering up wrongdoing, retaliating against whistleblowers and outspoken opponents, and using Town resources to service Bill Reilich and his associates' political campaigns.

150.    As set forth in the preceding paragraphs, the Enterprise's course of conduct included, but was not limited to:

a.  requiring Town employees to assist with campaign activities such as taking delivery of lawn signs and stuffing envelopes, both for Bill Reilich's campaigns and other campaigns for candidates of the Party.

b.  upon information and belief, requiring individuals seeking to run for local office to make a cash payment to Bill Reilich, who would then cause a check for that amount to be paid to the individual from the Party.

c.  upon information and belief, requiring multiple individuals, some of whom were employees of the Town, to perform free labor improving the personal and real property of Bill Reilich, Michelle Marini, and their family members.

**Pattern of Racketeering Activity**

151.    Within a ten-year period of time, the Enterprise continually engaged in a pattern of racketeering including but not limited to two or more acts of racketeering activity.

152.    This pattern, which became a regular way for the Enterprise to do business, included but was not limited to the following:

a.      requiring Bobby Johnson to engage in forced labor in violation of 18 U.S.C. § 1589 by means of a scheme or plan or pattern intended to cause him to believe that he would suffer serious harm, including but not limited to termination from his position with Greece if he did not perform such labor or services; and

b.      intimidating, threatening and/or corruptly persuading Bobby Johnson to lie and/or withhold testimony in an official proceeding in violation of 18 U.S.C. § 1512.

153.    As alleged above, numerous statements made and actions taken by members of the Enterprise were intended to cause Bobby Johnson to believe that he would suffer serious financial harm if he did not provide free labor to the Enterprise, including but not limited to:

a.      Bill Reilich and Michelle Marini's regular statement, "if they can't do anything for us, we don't need them";

b.      Bill Reilich's communications implying that the work was mandatory, such as, after Bobby Johnson informed Bill Reilich that he could not make it to the Ranch on a Friday, Bill Reilich's response via text message, "see you Saturday 8:30";

27

c.      After Bobby Johnson told Kirk Morris about the forced labor and asked him to intervene, Bill Reilich's statement to Bobby Johnson that Michelle Marini and Kirk Morris wanted him fired but Bill Reilich wanted him to stay;

d.      Kirk Morris, at the direction of Michelle Marini and Bill Reilich, stripping Bobby Johnson of his supervisory duties after his complaint to Kirk Morris and attempt to stop the forced labor;

e.      Kirk Morris's statement to Bobby Johnson that he had been stripped of supervisory duties because "Michelle wanted you to feel the pinch;"

f.      Bill Reilich, Kirk Morris, and Michelle Marini refusing to give Bobby Johnson a promised pay raise after his complaint to Kirk Morris; and

g.      After Bobby Johnson reported the adverse employment actions to Karlee Bolaños, her question to him, "aren't you still working on Bill's cars at the Ranch?"

154.    As alleged above, Bill Reilich attempted to threaten, intimidate, and/or corruptly persuade Bobby Johnson to withhold testimony and lie in an official proceeding during their conversation at the Eagle diner on April 13, 2022, through several statements, including but not limited to:

a.  Telling Bobby Johnson that if the investigator asked about his work at the Ranch, Bobby Johnson should tell the investigator that he was not at the Ranch, but was working for Greece from home; and

b.  Warning Bobby Johnson that he needed to protect Bill Reilich and Michelle Marini's "integrity."

155.    These predicate acts are part of a scheme and are not isolated events.  These acts were ongoing from 2014 through Bobby Johnson's forced retirement in May 2022.

156.    The Enterprise exists separate and apart from the racketeering activity alleged herein, in that the pattern was one scheme in the broader activities of the Enterprise.  The Enterprise accomplishes its goals of extracting wealth from the Town and maintaining its power through a variety of other means, legitimate and illegitimate.

157.    Bill Reilich, Michelle Marini, Kirk Morris, and Keith Suhr are associated with the Enterprise, have participated in the management and operation of the enterprise, and deliberately caused two or more predicate crimes to be perpetrated on Bobby Johnson.

**Injury to Bobby Johnson**

158.    As a direct and proximate result of the Enterprise's conduct, Bobby Johnson was injured by the Enterprise forcing him to perform work, including on Saturdays, Sundays, evenings and his days off from Greece, on the Enterprise's private business, without any compensation or remuneration.  Bobby Johnson was deprived of a promised pay raise.  He was deprived of the use of his accumulated PTO during employment and payout of it upon retirement.  As a result of the Enterprise's conduct, Bobby Johnson was compelled to take an early retirement for many reasons, including protecting his pension after refusing to deceive the Monroe County District Attorney's Office, leading to a loss of future wages.  As a result of the Enterprise's actions, Bobby Johnson has incurred the loss of the retiree healthcare insurance that he earned and was entitled to after thirty-six years of employment.

159.    As a result of the foregoing, Bobby Johnson is entitled to an award of damages in an amount to be determined at trial, including treble damages, and reasonable attorneys' fees and costs associated with this action pursuant to 18 U.S.C. § 1964(c).

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF 18 U.S.C. § 1962(d) (RICO)**
(**Against Bill Reilich, Michelle Marini, Kirk Morris and Keith Suhr**)

160.    Plaintiff repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

161.    Since at least 2014, Bill Reilich and Michelle Marini were architects of the Enterprise, with Kirk Morris and Keith Suhr later joining to Enterprise and willfully combined, conspired, and agreed with one another and with others to violate 18 U.S.C. § 1962(c), that is, to conduct and/or participate, directly or indirectly, in the affairs of the Enterprise, the activities of which were conducted through a pattern of racketeering activities in violation of 18 U.S.C. § 1962(d).

162.    As alleged above, Bill Reilich, Michelle Marini, Kirk Morris, and Keith Suhr were each aware of and agreed to the illegal purposes of the Enterprise and adopted the goal of furthering the criminal endeavor.

163.    Bill Reilich and Michelle Marini actively required Bobby Johnson to perform unpaid labor for their personal gain, and facilitated it by requiring Bobby Johnson to use his PTO time with Greece and/or report his time working for Bill Reilich as Greece time.

164.    Kirk Morris was aware of the forced labor since, at the latest, Bobby Johnson's complaint regarding the forced labor in 2020.

165.    Kirk Morris took steps to facilitate the forced labor in that he participated in a scheme or plan which caused Bobby Johnson to believe that if he did not submit to the Enterprise's demands for free labor, he would suffer serious financial harm and lose his job with the Town of Greece.

166.     Keith Suhr was aware of the forced labor since, at the latest, when he discussed the forced labor with Bobby Johnson in 2020.

167.     Keith Suhr took steps to facilitate the forced labor by denying Bobby Johnson his health care coverage after Bobby Johnson stopped performing free labor for the Enterprise.

168.     As a direct and proximate cause of the conduct of Bill Reilich, Michelle Marini, Kirk Morris and Keith Suhr, Bobby Johnson was injured by the Enterprise forcing him to perform work, including on Saturdays, Sundays, evenings and his days off from Greece, on the Enterprise's private business, without any compensation or remuneration.  Bobby Johnson was deprived of a promised pay raise.  He was deprived of the use of his accumulated PTO during employment and payout of it upon retirement.  As a result of the Enterprise's conduct, Bobby Johnson was compelled to take an early retirement for many reasons, including protecting his pension after refusing to deceive the Monroe County District Attorney's Office, leading to a loss of future wages.  As a result of the Enterprise's actions, Bobby Johnson has incurred the loss of the retiree healthcare insurance that he earned and was entitled to after thirty-six years of employment.

169.     By reason of the aforesaid conduct, Bobby Johnson is entitled to treble damages, costs and reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c).

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF THE FLSA BY FAILING TO PAY MINIMUM WAGE**
**(Against Greece, Bill Reilich, and Michelle Marini)**

170.     Bobby Johnson repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

171.     At all relevant times herein, Bobby Johnson has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

172.    During all relevant times herein, Greece, Bill Reilich and Michelle Marini were jointly the "employers" of Bobby Johnson within the meaning of the FLSA.  29 U.S.C. § 203(d).

173.    During all times relevant to this action, Bobby Johnson was the "employee" of Greece, Bill Reilich and Michelle Marini within the meaning of the FLSA.  29 U.S.C. § 203(e).

174.    Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations.  None of the FLSA exemptions apply to the personal business work Greece, Bill Reilich and Michelle Marini suffered and permitted Bobby Johnson to perform without compensation and benefits.

175.    The FLSA regulates, among other things, the payment of minimum wage by public agencies whose employees are engaged in interstate commerce or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. §206(a).

176.    Greece and Bill Reilich are subject to the FLSA's minimum wage requirements because they are enterprises or public agencies engaged in interstate commerce, and their employees are engaged in commerce.  At all relevant times, Bill Reilich routinely purchased, transported and sold used vehicles across state lines.

177.    Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

178.    Greece, Bill Reilich and Michelle Marini knew or should have known that their pay and reimbursement policies, practices and methodology result in failure to compensate Bobby Johnson at the federal minimum wage.

179.    Greece, Bill Reilich and Michelle Marini violated the FLSA by failing and refusing to pay federal minimum wage to Bobby Johnson.

180.    Bobby Johnson's rights were violated by a uniform and employer-based compensation policy.

181.    Bobby Johnson is entitled to damages equal to the federal minimum wage plus periods of equitable tolling, because Greece, Bill Reilich and Michelle Marini acted willfully and knew, or showed reckless disregard for, whether their conduct was unlawful.

182.    Greece, Bill Reilich and Michelle Marini have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Bobby Johnson is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b).  Alternatively, should the Court find that Greece, Bill Reilich and Michelle Marini did act in good faith and with reasonable grounds in failing to pay minimum wage and/or overtime compensation, Bobby Johnson is entitled to an award of prejudgment interest at the applicable legal rate.

183.    As a result of the willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Greece, Bill Reilich and Michelle Marini from Bobby Johnson.  Accordingly, Greece, Bill Reilich and Michelle Marini are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF THE FLSA BY FAILING TO PAY OVERTIME
### (Against Greece, Bill Reilich, and Michelle Marini)

184.    Plaintiff repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

185.   Under Section 7 of the FLSA, codified at 29 U.S.C. § 207, employees are entitled to be compensated at a rate of at least one and one-half times their "regular rate" of pay for all time worked in excess of 40 hours per workweek.

186.   Greece, Bill Reilich and Michelle Marini knew or should have known that their pay and reimbursement policies, practices and methodology resulted in failure to provide required overtime compensation for over 40 hours worked in a workweek.

187.   For example, during the week of August 24, 2018, Bobby Johnson worked in excess of forty hours as he was required to travel to Florida and pick up a motor home for Bill Reilich. During the week of September 8, 2020, Bobby Johnson was required to work in excess of forty hours as Bill Reilich required him to travel to Illinois to pick up a motor home and return the motor home to the Ranch.   During the week of August 1, 2018, Bobby Johnson was required to work more than forty hours as Bill Reilich required him to travel out of state to sell Bill Reilich's Batmobile.

188.   Greece, Bill Reilich and Michelle Marini, pursuant to their policy and practice, violated the FLSA by failing and refusing to pay federal overtime compensation to Plaintiff.

189.   Bobby Johnson is entitled to damages equal to the Federal overtime pay at time and a half his regular rate plus periods of equitable tolling, because Greece, Michelle Marini and Bill Reilich acted willfully and knew, or showed reckless disregard for, whether their conduct was unlawful.

190.   Greece, Bill Reilich and Michelle Marini have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Bobby Johnson is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime wages under 29 U.S.C. § 216(b).  Alternatively, should

the Court find Greece, Bill Reilich and Michelle Marini did act in good faith and with reasonable grounds in failing to pay overtime compensation, Bobby Johnson is entitled to an award of prejudgment interest at the applicable legal rate.

191.    As a result of the aforesaid willful violations of the FLSA's overtime provisions, overtime compensation has been unlawfully withheld by Greece, Bill Reilich and Michelle Marini from Plaintiff.  Accordingly, Greece, Bill Reilich and Michelle Marini are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

### FIFTH CLAIM FOR RELIEF
### RETALIATION FOR REPORTING FLSA VIOLATION
### (Against All Defendants)

192.    Plaintiff repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

193.    The FLSA provides that it is unlawful for any person ... to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3).

194.    Bobby Johnson participated in a protected activity known to Defendants by complaining, among other matters, about being forced to work for no pay and to use his PTO to be paid for the time each week he was required to work on the personal matters and business of Greece, Bill Reilich and Michelle Marini.

195.    Defendants retaliated against Bobby Johnson for his opposition to their violations of law by removing Bobby Johnson's supervisory duties, retracting a promised raise, requiring Bobby Johnson to apply his PTO to time spent working on the personal matters and business of

Bill Reilich, Michel Marini and Greece and by denying Bobby Johnson enrollment during open enrollment in the Retiree Health Plan.

196.    Bobby Johnson has been damaged by the retaliation of Defendants in an amount to be determined at trial, along with being deprived of access to the Greece Retiree Health Plan.

**SIXTH CLAIM FOR RELIEF**
**FAILURE TO PAY MINIMUM WAGE UNDER NEW YORK LABOR LAW**
(<u>Against Bill Reilich and Michelle Marini</u>)

197.    Bobby Johnson repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

198.    NYLL § 663(1) provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she may recover in a civil action the amount of any such underpayments, together with costs of all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due."

199.    At all times relevant to this action, Bobby Johnson was an employee of Bill Reilich and Michelle Marini within in the meaning of NYLL § 190(2) and § 651(5) and 12 NYCRR § 142-2.14.

200.    At all times relevant to this action, Bill Reilich and Michelle Marini failed to pay Bobby Johnson the statutory minimum wage for all hours worked in violation of NYLL § 652 and 12 NYCRR § 142-2.1.

201.    Bill Reilich and Michelle Marini did not have a good faith basis to believe that their underpayment of Bobby Johnson was in compliance with the law.

202.     Due to the NYLL violations of Bill Reilich and Michelle Marini, Bobby Johnson is entitled to recover from Bill Reilich and Michelle Marini his unpaid minimum wages, in an amount to be determined at trial, plus interest, attorney's fees and costs, and liquidated damages equal to 100% of the unpaid wages pursuant to NYLL §§ 190 et seq. and §§ 650 et seq.

## SEVENTH CLAIM FOR RELIEF
## FAILURE TO PAY WAGES UNDER NEW YORK LABOR LAW
### (Against Bill Reilich and Michelle Marini)

203.     Bobby Johnson repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

204.     Pursuant to Article Six of the NYLL, workers such as Bobby Johnson are protected from wage underpayments and improper employment practices.

205.     Pursuant to Article Six of the NYLL, Bill Reilich and Michelle Marini are not municipalities and any of their employees would not be considered employees of a municipality.

206.     Bill Reilich and Michelle Marini served as Bobby Johnson's employer as his supervisor, with the power to hire or fire him and to direct and dictate his hours and terms of employment.  This included, but was not limited to (1) when Michelle Marini directed Bobby Johnson to remove shelving from the Greece library and deliver the same to Michelle Marini's home and Bill Reilich's home, (2) when Michelle Marini directed Bobby Johnson to install a Ring camera system in her home, (3) when Michelle Marini directed Bobby Johnson to create wood carved centerpieces for a family member's wedding, (4) when Bill Reilich directed Bobby Johnson to plow the snow from his personal driveways, repair his daughter's car that was delivered to Bobby Johnson's home, mow the lawn at the Ranch, make repairs to the physical structure of the building at the Ranch, perform personal services such as cleaning and organizing Bill Reilich's home while he recovered from heart surgery, repairing and restoring cars for Bill Reilich to sell,

37

and paying permit fees in connection with real property improvements to the property at the Ranch, responding to inquiries from buyers of the used vehicles that Bill Reilich sold.

207.    As an employee of Bill Reilich and Michelle Marini, pursuant to NYLL § 191 Bobby Johnson was entitled to be paid all of his weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

208.    Bill Reilich and Michelle Marini have failed to pay Bobby Johnson all wages due, including minimum wages and overtime wages.

209.    The failure of Bill Reilich and Michelle Marini to comply with NYLL caused Bobby Johnson to suffer loss of wages and interest thereon.

210.    The failure of Bill Reilich and Michelle Marini to comply with the NYLL was willful.

211.    Due to violations of NYLL by Bill Reilich and Michelle Marini, Bobby Johnson is entitled to recover from Bill Reilich and Michelle Marini his unpaid wages, liquidated damages, reasonable attorneys' fees, costs and prejudgment and post judgment interest.

## EIGHTH CLAIM FOR RELIEF
## VIOLATION OF NEW YORK LABOR LAW – OVERTIME CLAIM
### (<u>Against Bill Reilich</u>)

212.    Plaintiff repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

213.    NYLL § 160 and 12 NYCRR § 142-2.2 requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty hours per workweek.

214.    Bill Reilich suffered and permitted Bobby Johnson to perform work in excess of forty hours per week.

215.    Bill Reilich failed to pay Bobby Johnson overtime pay for the hours that he worked over forty per week.

216.    Bill Reilich failed to keep records of the hours that Bobby Johnson worked for him.

217.    Bobby Johnson worked over forty hours per workweek for Bill Reilich on several occasions but Bill Reilich failed to pay him at least one and one-half times his regular rate in compliance with New York law.

218.    Bobby Johnson is entitled to his overtime pay for all hours worked in excess of forty per week at one and one-half times his regular rate.

219.    Bobby Johnson is also entitled to liquidated damages, interest, and attorneys' fees for violations of the NYLL by Bill Reilich.

**NINTH CLAIM FOR RELIEF**
**VIOLATION OF NYLL – FAILURE TO TIMELY PAY LABORER'S WAGES**
(<u>Against Bill Reilich and Michelle Marini</u>)

220.    Plaintiff repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

221.    Bill Reilich and Michelle Marini were Bobby Johnson's employer as his supervisor, with the power to hire or fire him and to direct and dictate his hours and terms of employment. This included, but was not limited to (1) when Michelle Marini directed Bobby Johnson to remove shelving from the Greece library and deliver the same to Michelle Marini's home and Bill Reilich's home, (2) when Michelle Marini directed Bobby Johnson to install a Ring camera system in her home, (3) when Michelle Marini directed Bobby Johnson to create wood carved centerpieces for a family member's wedding, (4) when Bill Reilich directed Bobby Johnson to plow the snow from his personal driveways, repair his daughter's car that was delivered to Bobby Johnson's home, mow the lawn at the Ranch, make repairs to the physical structure of the building at the Ranch,

perform personal services such as cleaning and organizing Bill Reilich's home while he recovered from heart surgery, repairing and restoring cars for Bill Reilich to sell, and paying permit fees in connection with real property improvements to the property at the Ranch, responding to inquiries from buyers of the used vehicles that Bill Reilich sold.

222.    Bobby Johnson's work as a mechanic and general laborer for Bill Reilich and Michelle Marini constituted work as a laborer pursuant to NYLL § 190(4).

223.    As a result, Bill Reilich and Michelle Marini were required to pay Bobby Johnson for his work as a mechanic and general laborer on a weekly basis pursuant to NYLL § 191(1)(a).

224.    NYLL § 191(d) provides that a worker shall be paid the wages earned in accordance with the agreed-upon terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer.

225.    NYLL § 198(1-a) provides that "in any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the [CPLR], and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due."

226.    Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for the violations of the NYLL's provisions by Bill Reilich and Michelle Marini.

## TENTH CLAIM FOR RELIEF
## RETALIATION FOR REPORTING NYS LABOR LAW VIOLATIONS
### (Against Bill Reilich and Michelle Marini)

227.    Plaintiff repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

228.   NYLL § 215(a)(1) provides that an employer shall not "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee ... because such employee has made a complaint ... that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates [the NYLL ]."

229.   Bobby Johnson participated in a protected activity known to Bill Reilich and Michelle Marini by complaining, among other matters, about being forced to work for no pay and to use his PTO to be paid for the time each week he was required to work on Bill Reilich and Michelle Marini's personal interests, matters and business.

230.   Bill Reilich and Michelle Marini retaliated against Plaintiff for his opposition to Bill Reilich and Michelle Marini's violations of law by removing Plaintiff's supervisory duties, refusing to institute an earned and promised pay raise, requiring Plaintiff to apply his PTO to time spent working on the personal matters, interests and business of Bill Reilich and Michelle Marini and by denying Plaintiff enrollment in the Greece retiree health plan.

231.   Plaintiff has been damaged by Bill Reilich and Michelle Marini's retaliation in an amount to be determined at trial, along with being deprived of access to the Greece Retiree Health Plan.

### ELEVENTH CLAIM FOR RELIEF
### VIOLATION OF NYLL FOR FAILURE TO PROVIDE NOTICE AND ACKNOWLEDGEMENT OF WAGE RATE
### (<u>Against  Bill Reilich and Michelle Marini</u>)

232.   Plaintiff repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

233.   Bill Reilich and Michelle Marini failed to provide an accurate Notice and Acknowledgement of Wage Rate as required by New York Labor Law § 195(1) and (2) in relation to the personal unreimbursed work described above.

234.    As a result, Bill Reilich and Michelle Marini are liable for statutory fees and penalties pursuant to New York Labor Law § 198, together with reasonable attorneys' fees.

## TWELFTH CLAIM FOR RELIEF
## VIOLATION OF NEW YORK LABOR LAW FOR FAILURE TO PROVIDE WAGE STATEMENTS
### (Against Bill Reilich and Michelle Marini)

235.    Plaintiff repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

236.    Bill Reilich and Michelle Marini failed to provide accurate and timely wage statements as required by New York Labor Law § 195(3) for the aforesaid services Bill Reilich and Michelle Marini suffered, permitted and required Bobby Johnson to perform.

237.    As described above, Bill Reilich and Michelle Marini, on each payday, failed to provide Bobby Johnson with accurate wage statements containing the criteria required under the NYLL.

238.    Prior to February 27, 2015, pursuant to NYLL § 198(1-d), Bill Reilich and Michelle Marini are liable to Bobby Johnson in the amount of $100 for each workweek after the violation occurred, up to a statutory cap of $2,500.

239.    On or after February 27, 2015, pursuant to NYLL § 198(1-d), Bill Reilich and Michelle Marini are liable to Bobby Johnson, in the amount of $250 for each workday after the violation occurred, up to a statutory cap of $5,000.

240.    As a result, Bill Reilich and Michelle Marini are liable for statutory fees and penalties pursuant to New York Labor Law § 198, together with reasonable attorneys' fees.

## THIRTEENTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
#### (Against Bill Reilich and Michelle Marini)

241.    Plaintiff repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

242.    As discussed in detail above, Bobby Johnson was employed by and performed additional work outside his job duties for Bill Reilich and Michelle Marini from 2014 to 2022.

243.    Bobby Johnson invested substantial time and effort into working on Bill Reilich's side business, obtaining and then repairing and refurbishing vehicles for resale, including traveling with Bill Reilich to pick up or deliver vehicles.

244.    Bobby Johnson invested substantial time and effort fixing and maintaining Bill Reilich's family's personal vehicles.

245.    Bobby Johnson invested substantial time and effort working on maintenance and improvements for Bill Reilich and Michelle Marini's personal residences, including, but not limited to Bill Reilich's personal driveway, Michelle Marini's Ring camera system, the physical building on the Ranch and the surrounding property.

246.    Bobby Johnson also invested substantial time and effort working for election campaigns as required by Bill Reilich and Michelle Marini, including Bill Reilich's own campaign.

247.    Bobby Johnson invested substantial time and effort performing other tasks for Bill Reilich and Michelle Marini outside of his job description and duties.

248.    Bobby Johnson's work for and on behalf of Bill Reilich and Michelle Marini resulted in their obtainment of significant and valuable benefits.

249.    For example, the benefits conferred to Michelle Marini included free services in connection with improvements to her home, deliveries and wedding centerpieces.  But for Bobby

Johnson's unpaid labor, Michelle Marini would have had to pay for these and other services and as such was unjustly enriched.

250.    Bill Reilich used the Ranch as the location to repair and safeguard used vehicles that were later sold for profit.  But for the unpaid services that Bobby Johnson completed on the Ranch in connection with maintaining the physical structure and real property, the Ranch would not have been available for such purpose.  Bill Reilich was unjustly enriched by Bobby Johnson's efforts and labor.

251.    For a profit, Bill Reilich sold the vehicles that were received, repaired, restored and delivered by Bobby Johson, all services that were unpaid by Bill Reilich.  As such, Bill Reilich was unjustly enriched by Bobby Johnson's unpaid labor.

252.    Bill Reilich and Michelle Marini have failed to compensate Bobby Johnson for his work for and on their behalf.

253.    It would be against equity and good conscience to permit Bill Reilich and Michelle Marini to retain the benefits of Bobby Johnson's labor, while failing to compensate Bobby Johnson.

254.    In view of the foregoing, Bobby Johnson is entitled to actual, presumed, punitive, and other damages in an amount to be determined at trial.

## FOURTEENTH CLAIM FOR RELIEF
### QUANTUM MERUIT
### (Against Bill Reilich and Michelle Marini)

255.    Plaintiff repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

256.     Bobby Johnson performed substantial services for Bill Reilich and Michelle Marini, several examples of which are detailed above.  These services were performed by Bobby Johnson in good faith.

257.     Bill Reilich and Michelle Marini knowingly required and accepted Bobby Johnson's services performed outside of his scope of employment for Greece.  Bill Reilich and Michelle Marini's acceptance of these services is reflected by the numerous text messages directing Bobby Johnson to perform those same services.

258.     Bobby Johnson had a reasonable expectation that he would be compensated for the services he provided to Bill Reilich and Michelle Marini.

259.     Bill Reilich and Michelle Marini have failed and refused to pay Bobby Johnson for his services rendered.

260.     In view of the foregoing, Bobby Johnson is entitled to actual, presumed, punitive, and other damages in an amount to be determined at trial.

**FIFTEENTH CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**<u>(Against Greece)</u>**

261.     Plaintiff repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

262.     Greece contracted with Bobby Johnson to pay him wages for work completed.

263.     Bobby Johnson agreed to work thirty-five hours a week.

264.     As part of Bobby Johnson's benefit package with Greece under the Manager's Handbook, as consideration for his work, he was entitled to lifetime retiree health insurance, without reservation or discretion.

265.     This agreement constitutes an enforceable contract.

266.     Greece failed to pay Bobby Johnson his wages when he worked more than thirty-five hours.

267.     Bobby Johnson attempted to enroll in the health insurance during an open enrollment period and Keith Suhr and Bill Reilich refused to provide him with the enrollment package because Bobby Johnson had stopped performing unpaid work at the Ranch in his retirement.

268.     Greece, jointly and severally, breached its contract with Bobby Johnson by failing and refusing to allow his enrollment in the earned and promised retiree health care.

269.     In view of the foregoing, Bobby Johnson is entitled to damages in an amount to be determined at trial and/or a declaration awarding Bobby Johnson retiree health care.

**SIXTEENTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW**
(<u>Against Greece, Bill Reilich, and Keith Suhr</u>)

270.     Plaintiff repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

271.     This is a claim for deprivation of constitutional rights under color of state law brought pursuant to the recodification section 1979 of the Civil Rights Act of 1971, 42 U.S.C.A. § 1983, for remedies for Defendants' deprivation of civil rights and due process.

272.     Like other municipalities, historically Greece has provided a number of significant benefits to its long-time employees.  This includes, but is not limited to, benefits relating to health care insurance that are available after an individual retires.

273.     Upon information and belief, the Enterprise has used this benefit as a tool to further its goals.  The Enterprise has routinely leveraged this benefit in connection with securing employee and former employee cooperation.  This includes, but is not limited to leveraging this benefit as a

46

means of securing former and current employee cooperation in matters that further the Enterprise's interests. This is reflected by a number of different actions, including but not limited to the revision of employee handbooks providing Bill Reilich with discretionary control over this benefit.

274.    Greece's formal policy is to allow members of the Enterprise to either refuse to enroll participants, cancel coverage or provide this benefit at the discretion of Bill Reilich.

275.    Prior to these more formalized policies, the Enterprise's consistent and widespread control over this benefit constituted a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials. This is evidenced in part by comfort letters provided to departing employees confirming their availability.

276.    Greece is, and was at all times mentioned, a public entity, operating as an extension of the State of New York. Bill Reilich and Keith Suhr purported to be agents of the Town and to act in concert with this public entity. Bill Reilich and Keith Suhr were acting under color of their authority and, as such, under color of the statutes, ordinances, regulations, customs, and usages of New York State and the Town of Greece.

277.    Bobby Johnson has a property interest in lifetime retiree healthcare, as provided for and promised to him by one or more of the Defendants.

278.    Keith Suhr, who, as Personnel Director was a final policymaker with respect to employee benefits, wrongfully denied Bobby Johnson retiree health insurance coverage without due process.

279.    Bill Reilich, who, as Town Supervisor, was, in the alternative to Keith Suhr, the final policymaker with respect to employee benefits, wrongfully denied Bobby Johnson retiree health insurance coverage without due process.

280.     Pursuant to official Greece policy or unofficial custom, Bill Reilich, Kieth Suhr and Greece deprived Bobby Johnson of rights, privileges, and immunities secured by the Constitution of the United States and laws enacted under that Constitution, and the Constitution and laws of the State of New York.

281.     Bobby Johnson has been deprived of a property interest without the minimal protections of due process guaranteed under the United States Constitution.

282.     In view of the foregoing, Bobby Johnson is entitled to damages in an amount to be determined at trial and/or a declaration awarding Bobby Johnson retiree health care.

## SEVENTEENTH CLAIM FOR RELIEF
## VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT ("TVPA")
### (<u>Against Bill Reilich and Michelle Marini</u>)

283.     Plaintiff repeats, reiterates and realleges the previous paragraphs as though more fully set forth herein.

284.     Bill Reilich and Michelle Marini knowingly obtained the labor or services of Bobby Johnson by means of a scheme, plan or pattern intended to cause Bobby Johnson to believe that if he did not perform such labor or services, Bobby Johnson would suffer serious harm, namely, the loss of his job and livelihood.

285.     As alleged above, numerous statements made and actions taken by Bill Reilich and Michelle Marini were intended to cause Bobby Johnson to believe that he would suffer serious financial harm if he did not provide free labor to the Enterprise, including but not limited to:

  h.     Bill Reilich and Michelle Marini's regular statement, "if they can't do anything for us, we don't need them."

  i.     Bill Reilich's communications implying that the work was mandatory, such as, after Bobby Johnson informed Bill Reilich that he could not make it to

48

the Ranch on a Friday, Bill Reilich's response via text message, "see you Saturday 8:30"

j.      After Bobby Johnson told Kirk Morris about the forced labor and asked him to intervene, Bill Reilich's statement to Bobby Johnson that Michelle Marini and Kirk Morris wanted him fired but Bill Reilich wanted him to stay;

k.      Kirk Morris, at the direction of Michelle Marini and Bill Reilich, stripping Bobby Johnson of his supervisory duties after his complaint to Kirk Morris and attempt to stop the forced labor;

l.      Kirk Morris's statement to Bobby Johnson that he had been stripped of supervisory duties because "Michelle wanted you to feel the pinch."

m.      Bill Reilich, Kirk Morris, and Michelle Marini refusing to give Bobby Johnson a promised pay raise after his complaint to Kirk Morris;

286.    Under all of the surrounding circumstances, Bill Reilich and Michelle Marini compelled Bobby Johnson to perform or continue performing labor or services in order to avoid incurring that harm.

287.    This constituted a violation of 18 U.S.C. § 1589.

288.    Bobby Johnson was the victim of the crime of forced labor under 18 U.S.C. § 1589.

289.    Bill Reilich and Michelle Marini were perpetrators of the crime of forced labor against Bobby Johnson under 18 U.S.C. § 1589.

290.     Bill Reilich and Michelle Marini knowingly benefitted, financially and otherwise, from participation in a venture which has engaged in obtaining of labor or services by threats of serious financial harm, knowing or in reckless disregard of the fact that the venture has engaged in the obtaining of labor or services by such means.

49

291.    The actions and conduct of  Bill Reilich and Michelle Marini were unconscionable and completed with malice, moral turpitude and in complete disregard of Bobby Johnson's health and well-being.

292.    As a result of the actions and conduct of  Bill Reilich and Michelle Marini, Bobby Johnson incurred significant pain and suffering.  As a result of the overwhelming stress of the demands of Defendants, the retaliation he incurred and fear he experienced when he was directed to lie to a criminal investigator, Bobby Johnson suffered as he experienced a loss of enjoyment from being unable to spend more time with his children and family, overwhelming guilt for not being able to be more available to his twin sister while she was ill and before she died, overwhelming shame from being unable to escape the performance of unpaid services for Bill Reilich, Greece and Michelle Marini, and overwhelming fear and anxiety for having to retire early as a result of the misconduct of Bill Reilich and Michelle Marini.

293.    Bobby Johnson is entitled to an award of damages in an amount to be determined at trial, including punitive damages, damages for pain and suffering, and reasonable attorneys' fees and costs associated with this action pursuant to 18 U.S.C. § 1595.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Bobby Johnson prays for the following relief:

a.    Damages for unpaid wages, unpaid overtime wages, the monetary value of misappropriated PTO, and additional benefits in an amount to be determined at trial, but not less than $300,000.00 as against Greece, Bill Reilich and Michelle Marini jointly and severally;

b.    Damages for future lost wages and benefits caused by a forced retirement in an amount not less than $500,000 as against Greece, Bill Reilich and Michelle Marini jointly and severally;

c.     Damages for an amount equal to the monetary value of the raise earned and promised to Bobby Johnson that was wrongfully withheld in retaliation in an amount to be determined at trial as against Greece, Bill Reilich, Kirk Morris and Michelle Marini;

d.     Treble damages pursuant to RICO in an amount to be determined at trial, but not less than $2,400,000.00 as against Bill Reilich, Michelle Marini, Kirk Morris, and Keith Suhr jointly and severally;

e.     Liquidated damages equal to 100% of his unpaid overtime and unpaid wage claims as a result of the willful conduct of Bill Reilich and Michelle Marini pursuant to the NYLL in an amount to be determined at trial, but not less than $300,000.00 as against Bill Reilich and Michelle Marini jointly and severally;

f.     Statutory damages on the Eleventh Claim for Relief and the Twelfth Claim for Relief in an amount not less $5,000.00 as against Bill Reilich and Michelle Marini jointly and severally;

g.     A declaratory judgment as against Defendants providing that that Plaintiff is entitled to enrollment in the lifetime retire health insurance program and/or monetary damages in lieu thereof as against all Defendants jointly and severally;

h.     Compensatory and Punitive Damages in an amount to be determined at trial, but not less than $1,000,000 as against Greece, Bill Reilich and Michelle Marini jointly and severally;

i.     Pain and suffering damages in an amount to be determined at trial, but not less than $1,000,000 as against Greece, Bill Reilich and Michelle Marini jointly and severally;

j.     Reasonable attorneys' fees and costs as against all Defendants jointly and severally;

k.     Pre-judgment and post-judgment interest as against Greece, Bill Reilich and Michelle Marini jointly and severally; and

l.      Any and all other relief which this Court deems just and proper.


Dated: Rochester, New York                          Respectfully Submitted,
       October 18, 2023
                                                    ABRAMS FENSTERMAN, LLP

                                                    /s/ Maureen Bass
                                                    Maureen T. Bass
                                                    Alexander J. Fantauzzo
                                                    *Attorneys for Plaintiff*
                                                    2280 East Ave, First Floor
                                                    Rochester, New York 14610
                                                    Phone: (585) 218-9999
                                                    mbass@abramslaw.com
                                                    afantauzzo@abramslaw.com