UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Robert Johnson,

    Plaintiff,

v.

Town of Greece, et al.,

    Defendants.

**ORDER TO SHOW CAUSE**

23-cv-6441-EAW-MJP

---

## INTRODUCTION

**Pedersen, M.J.** Miscommunications or crossed wires are much easier to forgive than lying to the Court. I hope that is all my inquiry here uncovers.

Based on this Court's authority under Fed. R. Civ. P. 11, the below background, and representations that the parties have made,

**I ORDER the parties to SHOW CAUSE** why I should not report and recommend Rule 11 sanctions to the Hon. Elizabeth A. Wolford, Chief Judge. I have directed the parties to file sworn statements on the docket by no later than May 17, 2024.

I further direct that **until 5 p.m. on May 16, 2024,** the parties may withdraw any representation or submission, avoiding any additional investigation by this Court.

BACKGROUND

This case involves the Town of Greece's former Deputy Commissioner of Public Works. That Deputy Commissioner, Robert Johnson, sued the Town and Town officials for allegedly making him work "thousands of unpaid hours," including for the Town Supervisor's "side business and personal business" and for "the Monroe County Republican Committee." (Am. Compl. ¶ 1, ECF No. 13, Oct. 18, 2023.) The complaint includes claims under

- 18 U.S.C. §§ 1962(c) & (d) (the Racketeer Influenced and Corrupt Organizations Act ("RICO" statutes)),
- the Fair Labor Standards Act (FLSA"), for retaliation and failures to pay minimum wage and overtime,
- the New York Labor Law, for claims like those under the FLSA,
- state tort law,
- 42 U.S.C. § 1983,
- and the Trafficking Victims Protection Act.

After Johnson filed his amended complaint, the Hon. Elizabeth A. Wolford, Chief Judge, referred this case to me by text order on September 27, 2023. (ECF No. 11.) While the Town has a motion to dismiss pending, the Town has proceeded with discovery—including of non-party witnesses. One of those non-party witnesses is Mr. William Murphy, Town Councilman. (Town's Letter at 1, ECF No. 34, Mar. 21, 2024 (providing

background for subpoena of non-party William Murphy to the Court).) This order stems from Murphy's involvement in this case.

### *The Town submits a stipulation for me to so-order without any context.*

Without providing any information about who Murphy is—or his involvement in this case—the Town filed a stipulation on the docket for me to so-order. That stipulation governed production of Murphy's cell phone contents. (ECF No. 28, Mar. 11, 2024.) I declined to sign that stipulation until I understood who Murphy was and why the Town needed to mirror the contents of his phone. (Text Order, ECF No. 29, Mar. 12, 2024.) The Town did not immediately respond.

A day later, Johnson filed a letter raising two red flags. *First*, Johnson stated that the Town identified Murphy in its initial disclosures but did not provide any meaningful information about why the Town sought information from him. The Town only stated that "[o]nce [the] ESI" from Murphy's cell phone is "secured, Defendants will provide Plaintiff with the relevant and material information." (Letter at 2, ECF No. 30, Mar. 13, 2024.)

*Second*, Johnson indicated that the Town has issued a litigation hold to his attorney. Johnson attached a copy of the Town's litigation hold letter. (*Id.*, Ex. B.) The Town's basis for the litigation hold is that the Town "ha[d] come to learn that Abrams Fensterman, LLP, is likely in possession of relevant and material information, including but not

3

limited to electronically stored information (ESI) stored on the cellular telephone" used by Johnson's attorney, Maureen T. Bass, Esq. (*Id.*) The Town's basis for this was an "initial investigation of the facts and circumstances of this litigation, including an interview," presumably with Murphy, "and examination of other corroborating evidence." (*Id.*) So, rather than ask Johnson's attorney why Murphy may have suggested that Johnson's attorney had communicated with him, or trying to gauge the situation informally, the Town forged ahead with issuing a litigation hold.

### *The Town responds to my concerns about the stipulation after I direct them to do so.*

The Town's lawyering tactics concerned the Court. So, I directed the Town to respond to the issues Johnson raised. The Town advised the Court about Murphy's position on the Greece Town Council and that he "thus constitutes a party representative." (Letter at 1, ECF No. 34.) Apparently, the Town's attorney conducted an interview of Murphy during which Murphy "advised … that he communicated with Ms. Bass regarding this matter."[1] (*Id.*)

---

[1] The Town's letter did not advise the Court who interviewed Murphy. I learned this information from the Town's counsel during the conference on March 29, 2024.

4

***Murphy weighs in, denying the Town's assertions.***

Johnson responded a day later, raising more red flags. Johnson's response included a letter from Murphy's attorney, Joseph R. Sullivan, Esq., and a sworn statement from Murphy. (Letter, ECF No. 35, Mar. 22, 2024.) I turn first to Murphy's sworn statement.

Under penalty of perjury, Murphy denies advising the Town of Greece that he "communicated with Ms. Bass regarding this matter[.]" (Murphy Decl. ¶ 2, ECF No. 35-1.) He likewise denies that he "admitted to deleting a text message" that he "received from Ms. Bass[.]" (*Id.* ¶ 3.) Murphy rounds out his sworn statement by declaring, "I have never met Ms. Bass nor have I ever communicated with her—by way of telephone, call, text message, email or any other means of communication about this matter or anything else." (*Id.* ¶ 4.)

As stated, Murphy's attorney, Joseph R. Sullivan, Esq., submitted a letter to the Court. Mr. Sullivan's letter states that Murphy does not believe he has any relevant information on his cell phone. Rather, he "believes that the service of a subpoena upon him is nothing more than a fishing expedition intended to intimidate and harass him." (Letter at 1, ECF No. 35-1, Mar. 22, 2024.) Murphy is cooperating with the Town only because he is "not in a position to afford a costly legal battle." (*Id.*) Johnson thus asked me to "make additional inquiry into" the Town's counsel's "representations to this Court; as well as whether the process

5

issued by Lippes Mathias LLP … had an improper purpose." (Letter at 1, ECF No. 35.)

### *I hold a conference with the parties and raise Rule 11.*

I discuss next the conference I held with the parties on March 29, 2024.[2] I learned the following during the conference:

- Because of Johnson's RICO claims, the Town has begun gathering discovery, including conducting interviews.

- Murphy's interview "was attended by" a Greece Town Attorney. It appears the interview happened on February 6, 2024.

- The Town stands by its representations. About this, the Town's lead attorney, Mr. Sleight stated: "There are witnesses and other corroborating evidence."

I set a deadline of May 17, 2024, for the Town and Johnson to respond. And I told the parties that although I was issuing this order to show cause, I would provide them a safe harbor. I have thus ordered that the parties may withdraw any representation implicated by this order until 5 p.m. on May 16, 2024 without penalty.[3]

---

[2] During the conference, I also directed the Town to make changes to the proposed stipulation located at ECF No. 28. The Town may resubmit that stipulation if it wishes.

[3] I note that I will not read into the parties' withdrawal of any representation. Indeed, the parties may decide to withdraw a representation out of an abundance of caution.

## MAGISTRAGE JUDGE JURISDICTION

"The issue [of] whether a magistrate judge has authority to impose sanctions under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, or its inherent powers remains unresolved in the Second Circuit." *Hart v. Blanchette*, No. 13-CV-6458CJS, 2019 WL 1416632, at *3 n.4 (W.D.N.Y. Mar. 29, 2019) (alteration added) (citing *Kiobel v. Millson*, 592 F.3d 78, 79 (2d Cir. 2010)), *report and recommendation adopted sub nom. Hart v. Crab Addison, Inc.*, No. 13-CV-6458 CJS, 2021 WL 2002996 (W.D.N.Y. May 19, 2021). Thus, the approach of magistrate judges in this District has been to report and recommend Rule 11 sanctions. *See, e.g., id.*; *see also Rankin v. City of Niagara Falls*, 293 F.R.D. 375 (W.D.N.Y. 2013) (reviewing report and recommendation of McCarthy, M.J., on Rule 11 issue). I anticipate I will do the same here if necessary.

## LEGAL STANDARD

"Under Rule 11, a court may sanction an attorney for, among other things, misrepresenting facts or making frivolous legal arguments." *Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108 (2d Cir. 2013). The rule "gives the court the power to initiate sanctions proceedings *sua sponte*." *Id.* (citing Fed. R. Civ. P. 11(c)(3)) ("On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).").

"In these rarer cases, however, the 21-day safe harbor does not apply and the court may impose sanctions without providing opportunity to withdraw the misstatement." *Id.*; *see also* Advisory Committee's Note of 1993 (noting that the safe harbor provision was not included for *sua sponte* proceedings). Because the safe harbor provision of Rule 11 does not apply, the Second Circuit has reasoned that *sua sponte* sanctions under Rule 11 are "akin to the court's inherent power of contempt." *Id.* Court imposing *sua sponte* sanctions under Rule 11 must accordingly find bad faith. *See, e.g., id.* (citing *In re Pennie & Edmonds LLP*, 323 F.3d 86, 91 (2d Cir. 2003)); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991).

Relevant here, an attorney may act in bad faith even when he or she is confused. *See United States ex rel. Hayes v. Allstate Ins. Co.*, 686 F. App'x 23, 28 (2d Cir. 2017) ("[C]onfusion about corporate complexities would not justify falsely purporting to have personal knowledge as to more than sixty defendants' involvement in wrongdoing."). A false statement of knowledge can constitute subjective bad faith where the speaker "knew that he had no such knowledge." *Id.* at 27.

## ORDER TO SHOW CAUSE

I do not approach the subject of sanctions with any enthusiasm. I hope that it turns out that no party has lied. And I note that I will "resolve all doubts in favor of the signer" of the submissions I have received.

*Motown Prods., Inc. v. Cacomm., Inc.*, 849 F.2d 781, 785 (2d Cir. 1988). However, Murphy's representations contradict the Town's representations in its letters[4] to me. As Mr. Sleight put it during the March 29 conference, these representations are "diametrically opposed."

Murphy's representations raise the issue of whether the Court has power to sanction Murphy (or his attorney) under Rule 11 should circumstances warrant. The plain language of Rule 11 suggests that once Murphy makes a representation to me in a submission on the docket, the duties under Rule 11 attach—at least as to his attorney. That is because the rule does not appear specific to attorneys who have appeared or who represent a party. *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper … *an attorney*

---

[4] True, "[c]ourts have been properly reluctant to characterize a letter generally as an 'other paper' on weighing Rule 11 sanctions." *In re Highgate Equities, Ltd.*, 279 F.3d 148, 153–54 (2d Cir. 2002) (quoting *Legault v. Zambarano*, 105 F.3d 24, 27 (1st Cir. 1997)). I only have letters before me here. But *Highgate* and the cases upon which its reasoning rests discuss letters *sent* to the district court—not those *filed* with the court. *See Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d at 1346 n.4 ("For a paper to trigger Rule 11, it must be both signed and filed in court."). In any event, because the letters here concern court action—that is, whether I will sign a stipulation—the letter issue is not a hurdle. *See Walker v. City of New York*, No. 14-CV-680 (NRM) (PK), 2024 WL 1158798, at *12 (E.D.N.Y. Mar. 18, 2024) (cleaned up) ("Those cases in which a letter has served as the basis for Rule 11 sanctions have involved instances in which a party has sought to have a court take action in reliance on it." (quoting *Lopez v. Constantine*, No. 94-cv-5921, 1997 WL 337510, at *3 n.6 (S.D.N.Y. June 18, 1997))).

or unrepresented party certifies" the four items listed in Fed. R. Civ. P. 11(b)(1)–(4)). Murphy may be covered by the "unrepresented party" portion. *Id*. However, I do not resolve this issue now. Murphy has already made a sworn declaration to this Court under penalty of perjury.

Based on the facts I have recounted, however, I am issuing this order to show cause to protect each party's clients, other litigants, attorneys, and the administration of justice before this Court.

**The Court thus ORDERS as follows:**

***First,*** the Town's counsel, Mr. Sleight, will file a statement under penalty of perjury explaining why—given the opposite representations from Murphy and the Town—the Town's "factual contentions have evidentiary support," were "formed after an inquiry reasonable under the circumstances," and were "not being presented for any improper purpose[.]" Fed. R. Civ. P. 11(b). Specifically, Mr. Sleight must address the below topics.

1. Whether Murphy stated during his interview that he deleted a text message from Johnson's attorney, Ms. Bass.

2. Whether Murphy stated during his interview that he communicated with Ms. Bass regarding this matter.

3. Who was present at the interview of Murphy. If Mr. Sleight was not present, he must describe how he came to his understanding of that interview (*e.g.*, by reviewing notes

10

    taken during the interview or speaking to the Town Attorney who attended).

  4. What other corroborating evidence "independent" of Murphy's interview led to the belief "that Abrams Fensterman, LLP" likely had "relevant and material information."

  5. What governmental investigation prevented the Town from meeting and conferring with Johnson and how it prevented the Court-directed meet-and-confer.

 ***Second,*** the Town's statement made under penalty of perjury must also explain why the litigation hold notice issued to Johnson's attorney and her law firm was not made for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]" Fed. R. Civ. P. 11(b)(1).

 ***Third,*** Ms. Bass is likewise directed to prepare an attorney declaration stating that she has never texted or otherwise attempted to communicate with Murphy. While Murphy stated he has never communicated with her, that is only Murphy's representation. It remains possible that Ms. Bass tried to communicate with Murphy.

 ***Fourth,*** I am instituting a safe harbor provision. Until 5 p.m. on May 16, 2024, the parties may remove any representations implicated by this order without penalty. *See, e.g., Lush v. Bd. Of Trs. Of N. Ill. Univ.*, 29 F.4th 377, 379–80 (7th Cir. 2022) (allowing plaintiff to

voluntarily dismiss action to avoid potential sanctions). The parties should do so by advising each other and me that they are no longer "representing A, B, or C." **This must be done by letter on the docket.**

*Finally*, the parties shall respond to this order to show cause by no later than May 17, 2024.

**IT IS SO ORDERED.**

Dated:   April 11, 2024
         Rochester, NY        /s/ Mark W. Pedersen
                              MARK W. PEDERSEN
                              U.S.M.J.