UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- x

ROBERT JOHNSON,

                                              Plaintiff,                              Case No.: 6:23-cv-06441

v.

TOWN OF GREECE, WILLIAM D. REILICH,
MICHELLE MARINI, KIRK MORRIS,
and KEITH SUHR,
                                              Defendants.

-------------------------------------------------------------------------- x

## **DECLARATION OF KARL J. SLEIGHT., ESQ.**

KARL J. SLEIGHT, ESQ., pursuant to 28 U.S.C. § 1746, declares that the following is true and correct:

    1.    I am an attorney and partner in the law firm Lippes Mathias LLP, attorneys for all Defendants in this matter, and I submit this Declaration in response to the Court's Order to Show Cause issued on April 11, 2024 (Doc. 39) (the "Order").

    2.    I stand by and reaffirm the truth of my representations to the Court in my March 21, 2024 letter as well as during the March 29, 2024 court conference. This Declaration, along with the accompanying Declarations of Kevin Overton, Esq., William Reilich, Keith Suhr, Kirk Morris, Aaron Springer and Jonathan Edwards, substantiate my statements to the Court with additional evidence and specifically detail information relating to each of the topics the Order to Show Cause required to be addressed.

    3.    The Court specifically inquired concerning the interview I conducted of William Murphy via Zoom on February 6, 2024. Kevin Overton, Esq., who is a partner at Weaver Mancuso Brighton PLLC, which firm serves as Attorneys to the Town of Greece, also attended the interview and was physically in the room with Mr. Murphy. I took contemporaneous notes during the

interview, and I understand that Mr. Overton also took notes.  I have an independent recollection of what occurred during the interview and that recollection is consistent with my notes from that meeting.

4.	Given the broad nature of the Complaint filed in this matter, which includes civil RICO claims and allegations dating back 10 years, I interviewed Mr. Murphy about his relationships and experiences with a variety of individuals, including but not limited to, Plaintiff's counsel, Maureen Bass, Esq.

5.	Mr. Murphy stated that he did not know Ms. Bass and had not spoken with her, but that he received a text message from her inquiring about Michelle Marini's salary.  At that point in time, Ms. Marini's position had changed from Deputy Town Supervisor to the Director of Constituent Service for the Town of Greece. Ms. Marini is a named Defendant in this case.

6.	Mr. Murphy's statements on this subject during my interview were consistent with his earlier statements made to Town officials William Reilich and Kirk Morris on January 18, 2024, more fully described in their respective declarations submitted herewith.  Specifically, as Mr. Murphy said on January 18, 2024, he also told me and Mr. Overton that he was contacted by Ms. Bass.

7.	In addition to the summary provided in my notes, I vividly recall my exchange with Mr. Murphy on this subject because it raised several concerns.  First, Plaintiff's counsel had apparently reached out to a Town board member for information, which I do not believe is appropriate given that the Town is a represented party.  Second, when I asked Mr. Murphy to locate the text message from Ms. Bass, he looked at his phone and stated that he no longer had it and then added that he had no messages prior to January 30, 2024 because they had been deleted.

8. After the complaint in this matter was filed with this Court, preservation notices were sent to all Town personnel in possession of potentially relevant information in August 2023, which included Mr. Murphy. Immediately after the February 6, 2024 interview, I sent Mr. Murphy an e-mail reminding him of his obligation to preserve and not delete anything and included the e-mail message from August 2023. A copy of that e-mail is attached hereto as **Exhibit A.**

9. Concerned over Mr. Murphy's failure to preserve potentially relevant and material information that would aid the Town's defense of the claims in the lawsuit, after the interview on February 6, 2024, I sent Mr. Murphy both text messages and an email reminding him of the need to preserve this information and that his cell phone would need to be imaged/mirrored/copied by the Town's e-discovery vendor Avalon. I suggested that Avalon mirror Mr. Murphy's phone on Thursday February 8 at 11 a.m., but Mr. Murphy stated he had "medical appointments." I then suggested Friday February 9, 2024 at 11 a.m. Thereafter, I received a call from Mr. Murphy stating that he had "personal banking information" on his phone, would not be permitting any imaging of his phone, and gave me the name of an attorney that he had hired to represent him in this matter. The phone was eventually imaged after further back and forth.

10. In light of Mr. Murphy's statement to Mr. Overton and me on February 6, 2024 that he had received a text message from Plaintiff's counsel that he no longer had, and the corroborating recording of a conversation Mr. Murphy had with Supervisor Reilich in which he also mentioned the text message from Ms. Bass, I sent a litigation hold notice to Plaintiff's counsel as well as a subpoena for Mr. Murphy's cell phone. Although there may or may not have been other individuals on that particular text message, Ms. Bass is the only one identified specifically as someone who should be in possession of the message. I made sure to specifically state in the litigation hold notice that we are concerned about preservation of electronically stored information (ESI) on Ms. Bass's

phone. At this juncture, our purpose in the litigation hold was to alert Ms. Bass of the need to preserve the information and, as of this writing, we have not taken any steps, e.g. issue a subpoena, etc. to force a collection of material from her phone through an ESI vendor. I had a professional obligation to take steps to ensure potentially relevant information is preserved, and had I failed to seek to preserve that text message it may have been detrimental to my clients.

11. Although a litigation hold notice to opposing counsel is a bit unusual, it was clearly required in this case since we understood that Ms. Bass had at least some non-privileged communications with Town personnel that needed to be preserved and that at least one potentially relevant text message from Ms. Bass had already been deleted by its recipient. There was no intent on my part or on the part of the Town to harass, cause unnecessary delay or needlessly increase the cost of litigation. Indeed, Plaintiff's counsel should be preserving the information at issue even absent the served notice.

12. With respect to the assertions in the Sworn Statement of Mr. Murphy dated March 22, 2024 (Dkt. 35-1) as well as Ms. Bass's representations that she did not communicate with Mr. Murphy, I can say unequivocally that Mr. Murphy stated on two occasions that he received a text message from Ms. Bass and that he told me and Mr. Overton that he no longer had that text message. Furthermore, the Town's e-discovery vendor Avalon imaged Mr. Murphy's iPhone and, as Jonathan Edwards of Avalon states in his Declaration, Mr. Murphy's phone was not set to automatically delete messages. Instead, it remained on the "forever" factory setting, which I understand means any deletions would have had to be manual. Mr. Murphy's sworn statements in which he denies receiving and deleting Ms. Bass's text message are directly contrary to what he told me and Mr. Overton on February 6, 2024 and what I understand he said to Mr. Morris and Mr. Reilich in the recorded conversation on January 18, 2024.

13. Ms. Bass's objection to a good faith litigation hold notice and her representations to the Court – both in her submissions and during the March 29, 2024 court conference – are particularly concerning. Even if we are unable to recover her communications with Mr. Murphy, she cannot possibly deny that she has non-privileged communications relevant to my clients on her cell phone. As detailed in the accompanying Declaration of Deputy Chief Aaron Springer, the Town is aware of an associate of Ms. Bass posing as an interested homebuyer in order to gain access to the interior of Michelle Marini's home, take pictures of various items in the house and text them to Ms. Bass. The images of texts attached to Deputy Chief Springer's Declaration unequivocally show that Ms. Bass is in possession of additional relevant information.

14. Earlier today, on May 17, 2024, Ms. Bass requested that she be permitted to make her submission in response to the Court's Order to Show Cause <u>after</u> the Town's submissions because she is "in the dark" about the Town's allegations. As this Court considers the possibility of sanctions, I respectfully ask that the Court consider the genesis of the instant dispute and recognize that it does not stem from any allegations by the Town. Mr. Murphy is a Town board member and – despite some initial delays – was in the process of cooperating with the Town's investigation of this case. The subpoena for Mr. Murphy's phone records was issued as a necessary formality, no motion to quash was made and we were working through any confidentiality and privacy concerns with Mr. Murphy through his counsel Joseph Sullivan, Esq. There were no allegations made against Ms. Bass. To the contrary, Ms. Bass complained to the Court that Lippes Mathias LLP issued a litigation hold notice in bad faith and attached to her submission an affidavit by Mr. Murphy, which the Court then noted contradicted representations in my submissions. I am hopeful the Court finds that the Town's comprehensive submission demonstrates conclusively that my firm has acted in good faith at all times.

15. Ms. Bass has also asserted that I refused to meet and confer, and the Court's Order to Show Cause asks "[w]hat governmental investigation prevented the Town from meeting and conferring with Johnson and how it prevented the Court-directed meet-and-confer." First, after Ms. Bass initially accused me of serving a Litigation Hold Notice in bad faith, I responded by letter dated February 14, 2024 (Doc. 34-1), referencing again the interview I had with Mr. Murphy described above, advising that an ongoing confidential investigation was taking place, and contesting the practical obstructions and utility of a meet and confer on this narrow topic. I was not in a position to retract the Litigation Hold Notice and had no authority to release information or delve into any additional evidence the Town had of potentially relevant text messages on Ms. Bass's phone at that time. I have since been authorized to reveal to this Court that the investigation includes confirmation, among other things, that Ms. Bass exchanged text messages regarding Ms. Marini with Mr. Salway, as more fully described in Deputy Chief Springer's Declaration submitted herewith. Furthermore, I can now disclose to this Court that relevant information was uncovered during investigations related to a Greece police officer's Workers Compensation Insurance claims, complaints made by Mr. Salway relating to alleged harassment of an acquaintance, and certain investigations related to leaks of private and confidential information. I was not authorized, and had no reason, to discuss and disclose those sensitive collateral matters with Ms. Bass at the time of her requested "meet and confer" related to Mr. Murphy's cell phone subpoena.

16. I continue to have significant reservations regarding sharing of any information or meeting and conferring with Ms. Bass. Her March 22, 2024 submission to the Court included Mr. Murphy's Sworn Statement wherein he suddenly denied receiving any communication from her. Mr. Murphy's affidavit contradicted his earlier statements, and if Ms. Bass sent a text message to Mr. Murphy from her phone, she cannot deny knowledge of the matter at hand. She also must know

that she has communicated with others via text on her cell phone regarding individuals named as defendants in this case, so her objection to a routine litigation hold notice appears to be an effort to avoid her preservation obligations and disclosure of other non-privileged material. Furthermore, given that there is some evidence indicating that Ms. Bass may be leaking certain confidential information she learns during confidential internal affairs meetings (for example, a detailed FOIL request submitted to the Town by one of her clients the day after another client's confidential internal affairs meeting), I remain concerned that details of any meet and confer would be posted on Facebook and would potentially jeopardize sensitive matters under review by law enforcement and the Town. To further underscore the point, on January 26, 2024 at 2:00 p.m. , I had a meet and confer with Ms. Bass over Zoom to discuss ESI protocols in this litigation. I later learned that during my conference with her, Ryan Murphy and a Greece police officer involved in an unrelated investigation were at Ms. Bass's office during the time we were conferring.

17. As an officer of the Court, Ms. Bass should be held accountable to the extent she knowingly made inaccurate representations to the Court.

18. For all the foregoing reasons, I respectfully request that this Court order Plaintiff's counsel to comply with their preservation obligations, and that the Court sanction Ms. Bass and/or Mr. Murphy for their submissions and representations with respect to the instant matter. The Town expended significant resources and incurred attorneys' fees to respond to this Court's Order in a comprehensive manner.

19. Finally, it is evident from the Declaration of Deputy Chief Springer that Ms. Bass engages in a practice of collaborating with other individuals and relies on tactics intended to circumvent discovery, which stands to taint the integrity of this litigation, and I respectfully ask that

the Court consider whether such conduct warrants Ms. Bass's disqualification as counsel in this litigation.

Dated: Saratoga Springs, New York
      May 17, 2024

                                Respectfully submitted,

                                LIPPES MATHIAS LLP

                                */s/ Karl J. Sleight*
                                Karl J. Sleight, Esq.
                                *Attorneys for Defendants*
                                60 Railroad Place, Suite 402
                                Saratoga Springs, New York 12866
                                T: (585) 682-6550
                                ksleight@lippes.com